# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 8305 | **DATE** | August 9, 2002 |
| **CASE TITLE** | *International Molding v. Engineered Foundry Services* | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] EFS' motion to dismiss for lack of personal jurisdiction, for improper venue, and for a transfer of venue [4-1] is denied. Enter Memorandum and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | AUG 1 2 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | 25 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| RTS | courtroom deputy's initials | 02 AUG -9 PM 3:43 FILED | date mailed notice mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| INTERNATIONAL MOLDING MACHINE COMPANY, Plaintiff, | ) ) ) ) | |
| v. | ) | 01 C 8305 |
| ST. LOUIS CONVEYOR CO., d/b/a ENGINEERED FOUNDRY SYSTEMS, Defendant. | ) ) ) ) ) ) | |

## MEMORANDUM AND ORDER

In this diversity action, plaintiff International Molding Machine Company ("IMMCO") claims that defendant St. Louis Conveyor, d/b/a Engineered Foundry Systems ("EFS") misappropriated its trade secrets in violation of the Illinois Trade Secrets Act ("ITSA"), 765 ILCS § 1065/1, *et al.* EFS has filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(3), asserting that this court cannot exercise personal jurisdiction over it and that venue is improper under 28 U.S.C. § 1391(a) and (c). Alternatively, EFS asks the court to transfer this case to the United States District Court, Eastern District of Missouri, pursuant to 28 U.S.C. § 1404(a). For the reasons set forth below, these motions are denied.

I.  **Background**

DOCKETED

IMMCO is an Illinois corporation with its principal place of business in Illinois. AUG 1 2 2002

IMMCO designs, manufactures, and services mold handling systems for use in foundries. EFS is a Missouri corporation with its principal place of business in Missouri. EFS designs, manufactures, installs and services sand delivery systems for use in foundries.

In early 2000, EFS contacted IMMCO to ask it to design, manufacture, and deliver a mold handling system for Kettler Casting Company for use at its Illinois foundry. In May of

25

2000, EFS contracted with IMMCO to purchase a mold handling system for installation at the Kettler foundry. During the course of the Kettler project, the parties regularly communicated with each other regarding the manufacture of the system. EFS employees and agents also visited IMMCO several times in connection with the project.

In November of 2000, EFS sent two employees to IMMCO to examine the equipment and witness a "dry run" of the system before IMMCO delivered it to Kettler. During that visit and pursuant to the parties' written agreement, IMMCO gave manuals, drawings, and other materials to the EFS employees. IMMCO provided this information to EFS so it could prepare maintenance booklets for Kettler to use when installing, servicing and maintaining the mold handling system. According to IMMCO, this information was comprised of trade secrets. IMMCO also alleges that, pursuant to the agreement, it gave EFS its trade secrets solely for use in the Kettler project and never authorized EFS to use its trade secrets for any other purpose.

In its complaint, IMMCO alleges that EFS subsequently used its trade secrets, without its express or implied consent, to manufacture a mold handling system for Kirsh Foundry, Inc. ("Kirsh"), located in Wisconsin. IMMCO claims that EFS' manufacture and sale of the system to Kirsh constitutes a violation of the ITSA. IMMCO also claims that EFS may be using its trade secrets in conjunction with other similar systems that EFS is currently bidding on.

For the purposes of establishing personal jurisdiction, IMMCO points out that EFS has contracted with at least eight other Illinois-based companies over the past 30 years, aside from the Kettler project. In connection with these projects, EFS has consistently sent employees to Illinois and has subcontracted with several other Illinois-based companies. EFS' business in Illinois has generated millions of dollars of revenue for the company. Finally, EFS advertises in

two national magazines whose circulation reaches Illinois and belongs to two national trade organizations located in Illinois.

On the other hand, EFS contends that it has no connection with Illinois other than its sales activities with the state. Furthermore, EFS states that it has no offices, agents, employees, or property in Illinois. EFS also points out that it presently does not have a business relationship with any Illinois-based company.

## II. Discussion

EFS seeks to dismiss IMMCO's complaint for lack of personal jurisdiction and for improper venue. Fed. R. Civ. P. 12(b)(2) & 12(b)(3); 28 U.S.C. § 1391(a) & (c). Alternatively, EFS seeks to transfer this action to the United States District Court, Eastern District of Missouri, pursuant to 28 U.S.C. § 1404(a). For the following reasons, both of these motions are denied.

### A. Personal Jurisdiction

In support of its motion to dismiss for lack of personal jurisdiction, EFS essentially raises two contentions. First, it argues that this court cannot assert personal jurisdiction under Illinois' long-arm statute. Second, it contends that the exercise of personal jurisdiction in this case does not meet either the federal or state constitutional due process requirements.

In ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) based on lack of personal jurisdiction, the court may consider matters outside the pleadings, such as affidavits and other materials submitted by the parties. *See* Fed. R. Civ. P. 12(b). The plaintiffs bear the burden of establishing personal jurisdiction by a preponderance of the evidence. *Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir. 1987). In making its determination regarding personal jurisdiction, the court must resolve any factual disputes in the plaintiffs' favor, but must accept the allegations in the plaintiffs' complaint as true only to the extent that they are not controverted

-3-

by other evidence in the record. *Id.* The court must also accept uncontested jurisdictional facts presented by the defendants as true. *Connolly v. Samuelson*, 613 F. Supp. 109, 111 (N.D. Ill. 1985).

Where the court's subject matter jurisdiction stems from diversity of citizenship, as in this case, the court may assert personal jurisdiction over a defendant only if personal jurisdiction would be proper in an Illinois court. *Michael J. Neuman & Assoc., Ltd. v. Florabelle Flowers, Inc.*, 15 F.3d 721, 724 (7th Cir. 1994). Under the Illinois long-arm statute, Illinois state courts have general jurisdiction over nonresident defendants "doing business" in Illinois and specific jurisdiction over nonresident defendants if the claims arise from their "transactions" in Illinois. 735 ILCS §§ 5/2-209(a) & (b).

The Illinois long-arm statute also contains a "catch-all" provision which allows Illinois state courts to assert personal jurisdiction to the maximum extent permitted by the Illinois and United States Constitutions. 735 ILCS § 5/2- 209(c). Thus, jurisdiction is coextensive with federal due process requirements. *See, e.g., RAR, Inc. v. Tuner Diesel Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997). The Due Process Clause of the Fourteenth Amendment to the United States Constitution limits when a state may assert in personam jurisdiction over nonresident defendants. *Pennoyer v. Neff*, 95 U.S. 714, 733 (1878). To assert personal jurisdiction consistent with federal due process, a defendant must have (1) "certain minimum contacts with the forum state such that (2) the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

A court's assessment of personal jurisdiction under this standard depends on whether the "general" or "specific" jurisdiction is at issue. *RAR, Inc. v. Tuner Diesel Ltd.*, 107 F.3d at 1277, *quoting Helicopteras Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984).

-4-

Specific jurisdiction refers to jurisdiction over a defendant in a suit "arising out of or related to the defendant's contacts with the forum." *Id.* at 1277. General jurisdiction is applicable when the lawsuit neither arose nor was related to the defendant's contacts with the forum state. *Id.* Such jurisdiction is permitted only where the defendant has "continuous and systematic general business contacts" with the state. *Id.*

Here, IMMCO argues that this court may assert both general and specific jurisdiction over EFS. Because the court agrees that EFS' contacts with Illinois are enough to this court to exercise specific jurisdiction over it, the court expresses no opinion regarding general jurisdiction.

As noted above, specific jurisdiction applies when the court is asserting jurisdiction over a defendant in a suit "arising out of or related to the defendant's contacts with the forum." *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d at 1277, *citing Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. at 416. The court may exercise specific jurisdiction over EFS if it "purposefully established minimum contacts within the forum state" and those contacts "make personal jurisdiction fair and reasonable under the circumstances." *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d at 1277, *quoting Burger King v. Rudzewicz*, 471 U.S. at 476-77. EFS has enough contacts with Illinois that relate to IMMCO's claims to satisfy both of these standards.

### 1. Minimum Contacts

In examining a defendant's contacts with a particular state, the court must determine whether that defendant "purposefully availed itself of the privilege of conducting activities" in the forum state so that it "should reasonably anticipate being haled into court there." *RAR, Inc. v. Tuner Diesel Ltd.*, 107 F.3d at 1277. In other words, the focus of the court's inquiry must be on "the relationship among the defendant, the forum, and the litigation." *Heritage House*

*Restaurants, Inc. v. Continental Funding Group, Inc.*, 906 F.2d 276, 283 (7th Cir. 1990). The main factor in the minimum contacts due process analysis is foreseeability. *Burger King*, 471 U.S. at 472-74. Contacts that are "random, fortuitous, or attenuated" are not sufficient to establish that a state's exercise of personal jurisdiction over the defendant had been foreseeable. *Heritage House*, 906 F.2d at 283.

Here, EFS' contacts with Illinois are enough to cause it to reasonably anticipate being haled into court there. EFS' agreement with IMMCO to provide a mold handling system for Kettler in its Illinois foundry shows that EFS purposefully availed itself of the privilege of conducting business activities in Illinois. Moreover, it is entirely foreseeable that EFS could be haled into court in Illinois: it initiated a business transaction with IMMCO directed at Illinois; its alleged misuse of IMMCO's trade secrets for purposes other than the Illinois Kettler project would be against IMMCO's wishes and a violation of the parties' written agreement; and EFS acquired the trade secrets because it was working on the Kettler project. Therefore, we concludes that EFS purposefully availed itself of the privilege of conducting business in Illinois so as to reasonably anticipate being haled into court there.

But do IMMCO's claims also "arise out of" or "relate to" EFS' contacts with Illinois in connection with the Kettler project? *See Euromarket Designs, Inc. v. Crate & Barrel Ltd.*, 96 F. Supp. 2d 824, 833 (N.D. Ill. 2000) (to establish specific jurisdiction, the plaintiff must show that the defendant's contacts relate to or arise out of the plaintiff's claims). In early 2000, EFS sought out IMMCO and asked it to provide a mold handling system for Kettler's Illinois foundry. IMMCO agreed to assist EFS, which meant that EFS had access to IMMCO's trade secrets.

EFS argues that the Kettler contract is not the basis of IMMCO's complaint. It thus concludes that its Illinois contacts (which relate to the Kettler contract) are not enough to support specific jurisdiction over non-contract claims. The court, however, declines to view the facts in this case in such a tortured fashion. EFS' alleged use of IMMCO's trade secrets in connection with the Kirsh project arose from and related to the written agreement that EFS and IMMCO made in connection with the Kettler project. Simply put, EFS only received IMMCO's trade secrets because it was involved with the Kettler project in Illinois, and it had extensive contacts with Illinois in connection with that project. Therefore, this action "arises out of" and "relates to" EFS' contacts with Illinois.

Finally, what is commonly known as the "effects doctrine" supports the exercise of specific jurisdiction. This doctrine kicks in when a defendant aims intentional, tortious actions at the forum state which harm a plaintiff in the forum state and the defendant knows that the plaintiff would be likely to suffer harm there. *Calder v. Jones*, 465 U.S. 783, 789-90 (1984). Where the injury is economic, a plaintiff must additionally establish that the defendant intended to affect an Illinois interest. *Real Colors, Inc. v. Patel*, 974 F. Supp. 645, 649-50 (N.D. Ill. 1997).

Under the effects doctrine, courts have exercised personal jurisdiction over a defendant who commits a tort against an Illinois business when the injury is felt in Illinois. *Indianapolis Colts, Inc. v. Metro. Baltimore Football Club, L.P.*, 34 F.3d 410, 411 (7th Cir. 1994) ("personal jurisdiction is proper in the state of the plaintiff's principal place of business because the injury primarily occurred where the plaintiff lives"); *Bunn-O-Matic Corp. v. Bunn Coffee Serv., Inc.*, 88 F. Supp. 2d 914, 920 (N.D. Ill. 2000). Therefore, specific jurisdiction can be proper when the

injury occurs in Illinois, even if all of the other relevant conduct took place elsewhere. *See Celozzi v. Boot*, No. 00 C 3285, 2000 WL 1141568 at *3 (N.D. Ill. Aug. 11, 2000).

Here, as EFS notes, the alleged misappropriation of IMMCO's trade secrets occurred in Missouri. However, it is undisputed that any injury suffered by IMMCO occurred in Illinois. Moreover, EFS knew that IMMCO was an Illinois corporation before it initiated the Kettler project and that IMMCO's trade secrets were provided for the sole purpose of completing that project. Accordingly, IMMCO has sufficiently alleged that it has suffered an economic loss in Illinois due to EFS' alleged misappropriation of its trade secrets. The court thus turns to the second major component of the court's personal jurisdiction inquiry: whether EFS' contacts with Illinois make the exercise of jurisdiction in this court reasonable and fair under the circumstances.

### 2. Traditional Notions of Fair Play and Substantial Justice

Federal due process requires that the exercise of personal jurisdiction over a nonresident defendant be reasonable. *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Pertinent factors include: (1) the interest of the state in providing a forum to the plaintiff; (2) the interest of the state in regulating the activity involved; (3) the burden of defense in the forum on the defendant; (4) the relative burden of prosecution elsewhere on the plaintiff; (5) the extent to which the claim is related to the defendant's local activities; and (6) avoidance of a multiplicity of suits on conflicting adjudications. *Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 115 (1987); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985). Because no one factor is dispositive, the court must balance all of the factors. *Euromarket*, 96 F. Supp. 2d at 840. However, the most important factors to consider are the interests of the forum

and the relative convenience of litigating in that forum. *Kohler Co. v. Kohler Int'l, Ltd., et al.*, 196 F. Supp. 2d 690, 700 (N.D. Ill. 2002).

Here, Illinois has a strong interest in adjudicating injuries that occur within its borders. *Coolsavings.Com, Inc. v. IQ.Commerce Corp.*, 53 F. Supp. 2d 1000, 1005 (N.D. Ill. 1999). This interest extends to disputes that arise out of business relationships formed between Illinois residents and nonresidents. *Kavo America Corporation v. J.F. Jelenko & Co.*, No. 00 C 1355, 2000 WL 715602 at *5 (N.D. Ill. Jun. 2, 2000). Furthermore, Illinois has an interest in regulating activities that involve the intellectual property rights of its corporate residents. *Coolsavings*, 53 F. Supp. 2d at 1005. Therefore, this Court finds that Illinois has a significant interest in adjudicating disputes that arise from the alleged misappropriation of an Illinois resident's trade secrets.

Second, it would not be unduly burdensome for EFS to litigate in Illinois. *Euromarket*, 96 F. Supp. at 840 (unless the inconvenience of having to litigate in the forum is so great as to deprive the defendant of due process, it will not overcome clear justifications for the exercise of jurisdiction). Traveling from St. Louis to Chicago is not oppressive. *See Euromarket*, 96 F. Supp. at 840 (modern advances in transportation and communication make it more reasonable to litigate in a foreign forum). Indeed, EFS employees have already traveled to Illinois in connection with several contracts with Illinois-based companies, including the Kettler project, and have attended several trade shows and business meetings in Illinois.

IMMCO has a strong interest in having its claim adjudicated in Illinois, since it is an Illinois corporation and its principal place of business is in Illinois. Finally, the record does not show that the location of evidence and witnesses make it unreasonable to efficiently resolve this case in Illinois. Accordingly, EFS' motion to dismiss for lack of personal jurisdiction is denied.

## B. Venue

In further pursuit of a one-way ticket back to the "Show Me" state, EFS argues that IMMCO's complaint should be dismissed for improper venue. "[A] corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c); *see generally Janmark, Inc. v. Reidy*, 132 F.3d 1200, 1203 (7th Cir. 1997). Since EFS is subject to personal jurisdiction in this forum, venue is proper here. EFS' motion to dismiss for improper venue is, therefore, denied.

## C. Motion to Transfer

Finally, EFS seeks to transfer this action pursuant to 28 U.S.C. § 1404(a), which provides that, "[f]or the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Under § 1404(a), the party seeking transfer must demonstrate that: (1) venue is proper in the transferor court; (2) venue would be proper in the transferee court; and (3) transfer will serve the convenience of the parties and witnesses and promote the interests of justice. *See, e.g., Mattson v. Gerry Wood Products Co.*, No. 95 C 2314, 1997 WL 158334 at *1 (N.D. Ill. Mar. 31, 1997). The movant must also demonstrate, "by reference to particular circumstances, that the transferee forum is clearly more convenient." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir.1986).

The convenience of the witnesses and the parties is the most important § 1404(a) factor. *Dunn v. Soo Line R.R. Co.*, 864 F. Supp. 64, 65 (N.D. Ill.1994). When evaluating this factor, the court considers: (1) the plaintiff's choice of forum; (2) the site of material events; (3) the availability of evidence in each forum; and (4) the convenience to the parties of litigating in the respective forums. *Houck v. Trans World Airlines, Inc.*, 947 F. Supp. 373, 375 (N.D. Ill.1996).

The court also considers whether the parties have met their burden of specifically identifying the witnesses they intend to call, as well as the general content of the witnesses' proposed testimony. *See Mattson v. Gerry Wood Products Co.*, 1997 WL 158334 at *1 (collecting cases).

With respect to the interests of justice prong, the inquiry generally centers on judicial economy rather than the litigants' or witnesses' private interests. *Koos, Inc. v. Performance Industries, Inc.*, 747 F. Supp. 487, 491 (N.D. Ill.1990). Relevant considerations include the forum's relationship to the cause of action, the court's familiarity with the applicable law and the court's likely access to the sources of proof and other evidence. *Dunn v. Soo Line R Co.*, 864 F. Supp. at 66. Because the task of weighing factors for and against transfer "necessarily involves a large degree of subtlety and latitude," the decision to transfer is committed to the sound discretion of the trial judge. *Coffey v. Van Dorn Iron Works*, 796 F.2d at 219.

In this case, venue is proper in this district as well as the proposed transferee district. Thus, the court will focus on whether transfer will serve the convenience of the parties and witnesses and promote the interests of justice.

1.  **Private Interests**

It is well established that a plaintiff's choice of forum is entitled to substantial weight, especially if it is the plaintiff's home forum. *United Air Lines, Inc. v. Mesa Airlines, Inc.*, 8 F. Supp. 2d 796, 798 (N.D. Ill. 1998). With respect to the site of material events, EFS' alleged misappropriation of IMMCO's trade secrets occurred in Missouri. However, the physical transfer of IMMCO's trade secrets to EFS occurred in Illinois. Furthermore, IMMCO is an Illinois corporation with its principal place of business in LaGrange Park, Illinois, and all of its employees live in Illinois. On the other hand, EFS' alleged use of IMMCO's trade secrets – including the design, manufacture and sale of the system allegedly incorporating the trade

-11-

secrets – took place in Missouri. *See Greene Mfg. Co. v. Marquette Tool & Die Co.*, No. 97 C 8857, 1998 WL 395155 *2 (N.D. Ill. Jul. 9, 1998). Therefore, this factor is in equipoise.

Unsurprisingly, the parties disagree as to the relative ease of access to sources of proof (including witnesses) in each forum and the cost of obtaining the attendance of witnesses. *See Coolsavings*, 53 F. Supp. 2d at 1006. Both locations are likely to be sources of proof, since the employees of both parties are located either in Missouri or Illinois. EFS' alleged misappropriation of IMMCO's trade secrets occurred in Missouri, and therefore, most of the relevant documents are probably in Missouri. In connection with motions to transfer, however, courts should only consider undisputed facts supported by affidavits, depositions, stipulations or other relevant documents, so speculation as to the location of evidence and witnesses is unhelpful. *See Midwest Precision Services, Inc. v. PTM Industries Corp.*, 574 F. Supp. 657, 659 (N.D. Ill. 1983). Thus, speculation as to the location of evidence does not weigh in favor of transfer.

In any event, regardless of where the trial is held, all of the relevant documents will have to be sent to the offices of trial counsel in St. Louis and Chicago. *See Coolsavings*, 53 F. Supp. 2d at 1006. In addition, modern transportation and communication have made the exchange of documents easier and cheaper, and St. Louis is hardly the Antipodes. *See id.* Thus, the overall relative ease of access to sources of proof do not weigh heavily in favor of either location.

With respect to the convenience of the parties, obviously it is easier for each party to litigate on its home turf. *Clearclad Coatings, Inc. v. Xontal, Ltd.*, No. 98 C 7199, 1999 WL 652030 at *11 (N.D. Ill. Aug. 20, 1999) (in assessing the convenience of the parties, the court should consider the parties' respective residences and their ability to bear the expenses of litigating in the particular forum). The witnesses for each party appear to be concentrated in that

party's home state. However, the court must also consider the convenience of potential non-party witnesses. IMMCO plans to call employees from the Kirsh foundry in Wisconsin, and these witnesses are indisputably relevant. Chicago is closer to Wisconsin and would be more convenient than St. Louis. Therefore, the interests of the witnesses weighs against a transfer.

### 2. The Interests of Justice

The interests of justice do not support transfer. First, IMMCO's complaint seeks relief under the Illinois Trade Secrets Act. It is very likely that an Illinois federal court, rather than a Missouri federal court, will be more familiar with an Illinois statute. Second, Illinois has a strong interest in adjudicating injuries to the intellectual property rights of its corporate residents.

Third, the speed at which this case would proceed in Illinois or Missouri does not weigh in favor of either forum. The two most relevant statistics for the purposes of transfer are: (1) the median months from filing to disposition; and (2) the median months from filing to trial. *Brandon Apparel*, 42 F. Supp. 2d at 834. Based on these statistics, the average case is disposed of two times faster in the Northern District of Illinois, but the average case proceeds quicker to trial in the Eastern District of Missouri.

In short, after carefully weighing the private and public interests, the court concludes that EFS has not demonstrated that transferring this action to the Eastern District of Missouri is "clearly more convenient" because a majority of the factors either are in equipoise or weigh against a transfer. Therefore, EFS' motion to transfer this action to the Eastern District of Missouri is denied.

## III. Conclusion

For the reasons stated above, EFS' motion to dismiss for lack of personal jurisdiction, for improper venue, and for a transfer of venue [4-1] is denied.

DATE: **AUG 0 9 2002**

Blanche M. Manning
United States District Judge

01cv8305.md